Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Maureen Connors presiding, case number 1-7-2833, People v. Dwight Culverson. Thank you very much, Mr. Schaffer, for calling the case, and welcome, attorneys, to the Illinois Appellate Court, 6th Division, we're happy to have you here today. The first thing I would like you to do is state your names for the record and tell us whom you represent. I'm Caroline Borland for the appellant, Dwight Culverson. Thank you. Assistant State's Attorney, Matthew Connors, on behalf of the people of the state of Illinois. Now, Mr. Connors, I have to say, we have a very, we have the same last name, as a matter of fact. Now, have you and I ever met? No, Your Honor. No. And every time I say that name, I tell everybody, he's not my cousin, I don't know him, we have no relationship. So let's make that very clear for the record. Correct, Your Honor. All right. And Mr. Connors, you represent the people of the state of Illinois. Thank you very much. All right. So the lawyers know that there's 20 minutes for your openings. And so if you want to take all that time, you can, you don't have to. The appellant will be given five minutes. You want to reserve five minutes for your response? Yes, Your Honor. Thank you. Okay, that'd be great. Speak up nice and loud. We're looking forward to argument. And Ms. Borland, if you're ready to proceed, feel free. Okay. Thank you. Good afternoon, again, Your Honors. May it please the court. This court is aware we have raised two issues in the brief. I do plan on touching on both of those issues today, but I'm going to switch the order and talk about our second issue regarding voir dire first, and then move on to the first issue of ineffective assistance. In this case, White Coverson did not receive a fair jury trial, where the court's conduct during voir dire cut off the vital flow of information between the veneer and the court. And then where a trial defense counsel promised the jury evidence and opening statement that he never delivered. First, the manner in which the court reacted during jury selection when a potential juror revealed she could not be fair, defeated the purpose of voir dire, and denied Coverson his right to a fair jury trial. During voir dire, questions are asked on specific topics on which potential jurors may hold bias. One of those questions is whether they have any experience with the topic of the case at hand and whether that will keep them from being unfair. When that question was asked in this case, potential juror Cassandra S. gave an honest answer, saying that due to her experience with substance charges and what she had been through, she was going to vote not guilty, no matter what the evidence showed. When they discussed her in the privacy of the judge's own chambers outside of the jury of the other veneer, the state expressed that it was thankful for her frank responses, and she was ultimately removed for cause. However, back when this was still before the other veneer, the court treated her very hostily and discouraged other jurors from revealing similar admissions of bias. First, the court accused Cassandra of simply wanting to get out of jury service in this case. When Cassandra said, no, I'm just, that was all she got out, the court cut her off, would not let her explain that. Then the court imposed a penalty for Cassandra for her answers, saying, I'm not just going to let you get out of jury service. Your name will be put back into the jury pool, and you'll be coming back here at a later date. Then most crucially, the court turned to all of veneer and said, I'm not just talking to her. I'm talking to all of you. Anyone who wants to give a response like this, you will not be let go. Your name will get back into the jury pool, and you will be called back sooner or later. The court stated further that... What was wrong with that? What was wrong with that? It was the... Go ahead. Yeah, what was wrong with that? Because it imposed a penalty, it suggested there was a penalty for jurors for expressing bias in this case. It's not fair to the American jury system to hold a bias. So if you give an answer like this, all of the efforts that you've put in and coming today, rearranging your schedule, getting babysitters, anything like that, it's all for naught. You're coming back again. It's imposing a penalty on these jurors, in addition to humiliation before the court, for revealing their own biases in this case, suggesting that should not be offered. What the court wanted from these jurors was to hear them say, I can be fair. And the federal district court in Roe said when jurors are... The exact quote here. When potential jurors are given reasons to fear reprisals from truthful responses, they will not answer questions about their biases truthfully. So we say here... Was the trial court telling a fib when the trial court said you're going to be back in the jury pool quite possibly? Is that true? It could have been a fib. I do know after jury selection was completed in this case, the actual penalty that the court imposed on Cassandra was to come back the next day for trial. That was after jury selection was completed. So we don't maintain that had an effect on the other jurors. But I mean, it seemed to be a very real threat. It was saying in definitive terms, you will be put back into the jury pool. You will come... Well, let me ask you the question, though. Who's responsible for putting jurors in or out of the jury pool? Is that the trial court judge? No, I don't think the court has the power to do that, Your Honor. So I think this was a vain threat. There's the one day one trial system that Justice Garcia talked about in People v. Brown. And I believe that still applies here. So I don't actually think the court had the power to do this. But the jurors wouldn't know that. Do we know that any jurors were discouraged by the trial court's comments? I would say that the fact that there was 28 jurors in this veneer right now, 27 of them, I'm sorry, 26 others of them said nothing. They were all very quick to say, I can be fair. I can be fair. That included Charles T., who right before Cassandra had stated, right before this exchange occurred with Cassandra, had stated, I'm not sure I can be fair. I don't know. And then when he was questioned individually, he was like, oh, yes, I can be fair. Cassandra herself later said, I can be fair, and folded as a state characterized it. There was just this one witness, Jennifer K., was the only one who ever subsequently expressed any hesitancy. But I would also note that that was during individual questioning of her. And when the court asked all of the veneer, is there anyone else after this happened with Cassandra that feels that they can't be fair in this case because of this? She didn't even raise her hand at that point. And we also maintain that Brown has said that you do need to show actual bias from a seated juror in order to show a plain error under the judicial integrity prong. We think this case is different for a couple of reasons for Brown, and also that that's an unfair requirement. One of the main differences from Brown and also Tresiak is that the penalty stated by the court there was not you have to come back a different day. It's just, you'll come and sit through this trial. Even if you're not a juror, you have to come for this trial. So the jurors were already sort of prepared for whatever alone this is going to take. It's not the same fear. There was also no direct admonishment from the trial court and Morales, Tresiak, or Brown about, I want you to be fair. It's unfair to our civil system for you to make up your mind without hearing the evidence and you will be brought out. There was no direct instruction, but also this requirement of showing actual bias, it's almost impossible for a defendant to prove a negative. As Justice Gordon said in dissenting in Brown, the surest proof that a juror was intimidated was through silence. So we would say that the silence is supportive of that. And I do know that the majority in Brown relied on the fact that in row, there had been an affidavit from a juror post-trial saying, I had been, or I'm sorry, it wasn't a juror. It was a person, a member of the panel that said, I felt intimidated by the court's conduct. Brown said, you could, why can't you have something like that here in Illinois? Unlike the federal district courts, it's questionable whether you even can submit affidavits like this and people be knits. The court talked about the Illinois Supreme court said, if you want to submit an affidavit about a bias that was suppressed before trial, it can only relate to objective facts, not subjective facts. So for example, taking that to this case, if a juror came forward and said during jury selection, I said I did not have a brother who dealt drugs or had experience with drugs, but in fact I did, that's something external. A juror can present that and that will be accepted, but it can't be something about, I admitted that before court, but I did not reveal my bias. And that bias led to deliberations because that's something that goes to the process of jury deliberation or of the jury reaching its verdict. And that can't be admitted. So in that example, the very juror in that case said during jury deliberations, three jurors, or I don't remember the exact number, but at least one or two jurors said we hold it against the defendant that he did not testify in this case. The defense tried to say, this means these jurors were suppressing their bias in that regard during jury selection and Illinois Supreme court said it's inadmissible. So we just can't prove it. So it is very difficult to prove. Also, I would say it's unreasonable to expect that a juror who held a bias would admit that in an affidavit, an actual seated juror, especially here where they've been told that was wrong. And in row, the way that that came out was this veneer person happened to run in defense counsel at a restaurant. As we kind of discourage, that's very unusual to run into a potential juror, have that juror come forward and say, this happened to me. And we do discourage defense counsel from harassing witnesses. So we would say that that requirement is something that can't be proven that it should be the conduct of the court on record. That should be addressed in determining whether plain error occurred. And here, the fact that the court drew, the fact that the court imposed threatened a penalty for revealing biases in this case, the fact that the court specifically admonished all of the veneer, it's unfair to, to resolve this case before hearing the evidence that's uncivil. And if you give me an answer, like Cassandra, you will be put back into the jury pool as well. It wasn't just a mere criticism of Cassandra, but a threat, all of these factors make that plain air in this case. I would also get out of your second issue. Yes. Regarding the first issue council's in a council was ineffective in making promises to the jury that council did not deliver at trial in opening statement. Council gave a detailed statement in this case, talking to the jury about how Carverson had been walking home. He was far away from home on a cold night in December of 2015. He accepted a ride from officer Jones. So on the condition that Jones would bring him home, if he showed Jones where the drugs were. So according to counsel, council said, you will hear evidence that all covered some did was take him to a house, say that's where the drug dealer lives. And then another man came to the car and sold Jones, the drugs, not covers them. However, there was no such evidence presented at trial. The jury never heard about any other man approaching and actually coming up to officer Jones car, let alone that. He actually gave Jones the drugs. The cases cited by both parties in this case show that these kinds of broken promises are deficient unless there's something occurred during trial to justify a change in strategy. In this case, there was no such justification. Council's argument tracked, what covers and said post trial and allocution in an approach, a motion he would have testified to those facts had he testified, but council knew both before, during, and after trial that covers him was not going to testify in this case. He stated twice right before the start of trial. I will not be calling covers it as a witness. He kind of said, I filed this Montgomery motion, but it doesn't matter because covers and won't be called covers. And admitted on his own. I did not testify in this case due to the pretrial ruling of the court in Montgomery. So council knew covers and was not going to testify. He also should have known from reading the police reports that the police officers were not going to say this third man came to the car, this third person. Cause certainly he did not impeach them with any contrary statements at trial. And then even when they were discussing jury instructions, the court, the state requested an accountability instruction and council was forced to say, no evidence presented of this third person at trial. So council was clearly wasn't there. I'm sorry to interrupt you, but wasn't there some evidence that was brought forward about this other person that was there at the vehicle? Wasn't there some evidence? So yeah, that other person was never mentioned. He was mentioned. So it was discussed by officer Jones and then the surveillance officer both said when covers and went to the house to get drugs, he walked out and there was another man who followed him, but the closest that man ever got to Jones actual car was like two houses away. I think was how Jones described that. He never came up to the actual car himself. So, but the inference, the specific promise was you will hear testimony that in fact, this other man gave Jones the drugs. Yeah. So we argued council was deficient. Coverson was also prejudiced by council's broken promise. Jurors hold a broken promise against the defendant. They think one of two things, either defense council simply lying. And so we can't trust anything he says, or he thought that the evidence was going to show this. And that's why he's pursued this vigorous defense, but it turned out not to be true. They're left to believe only the state's version is true. That was prejudicial in this case because the evidence was not overwhelming. Most particularly after covers and was alleged to sell the drugs to Jones. He was never out of Jones site. He was arrested still inside Jones car about five minutes later at that time, he had no money or drugs on his person. The state's theory in this case was that he was the middle man. You would think that he would have some of the $30 that Jones gave to him to buy the drugs. If that were true, maybe five or $10 or at least some drugs that he'd gotten from the person. He obtained the drugs from if he were in fact the middle man. So when you couple that with, There were some impeachment of Jones about his police reports. The fact that covers and was not doing anything at the start of this case or started these events to be advertising drugs. There were facts for the jury to think this case is not overwhelming. There are some flaws in the state's case, but when council presented this theory that was never developed, not even close to developed, it did suggest that the state's version was the only one that was true. So does this court have. Thank you counsel. Justice Harris. Any questions? No, thank you. Just justice Johnson. No, thank you. All right. Thank you for your presentation council and Mr. Connors. Thank you. And may it please the court. Again, Matthew Connors on behalf of the people, the state of Illinois, all address defense arguments the same way they are presented. So as to issue two, the people suggest that the circuit court's remarks during jury selection did not create any inference of a biased or unfair jury. It should be noted that defendant in this case is specifically argued that the jury's behavior could have been tainted by the circuit court's language in this case. But the argument being presented here is that, well, we can't prove that there was a taint. So the circuit court's language in and of itself has to be accepted. That is not the burden under plain air. This court in both Brown and Morales has held the plain air standard to require some showing of prejudice on behalf of defendant. If they're going to allege that a seated juror was biased, we don't have that in this case. Not only do we not have an allegation of bias anywhere on the record, we have several jurors who felt so comfortable with the circuit court that they not only responded to the court's questions. One juror actually sought out the circuit court during the recess to say, Hey, I forgot to tell you about this. I have somebody in my family who died of an overdose. I didn't put that on the record, but I wanted to tell you that now the circuit court then spread that of record. We had one perspective juror who actually pled the fifth when asked if whether or not he had a criminal background. We had multiple jurors respond that they had friends or relatives in law enforcement, but they could be fair. We had one perspective juror who admitted he couldn't speak English. We had a perspective juror Crouse, we get admitted to having a sibling who suffered with addiction and that might make this case difficult for her. Even after the jury was selected and the partners were getting ready to stop for the night, an additional juror, one that was seated, juror, Derek, I mean, juror Nichols said, I forgot to tell you, I actually have to go to court on my sister's divorce case the following day. So we have all of these jurors who felt so comfortable with the circuit court that they said, let me offer you this information to validate what biases I might have. It really doesn't logically follow that they would be afraid to comment on the bias question in and of itself. Devena has presented two arguments about that bias. First that the circuit court displayed some hostility or animosity. The people think that justice Harris, you picked right up on it. It's a question of whether or not saying you go back into the jury pool. Is that hostile? No, it's what happens. You don't just say, I get called for a jury once and I'm done. It said, there are consequences. If you don't want to sit on this jury, you will be put back in the jury pool. The circuit court did not say you have to come back. And I would note that in the row case, the defendant relies upon the circuit. Judge in that case, not only said you're going to come back for three months and you also will have to take a remedial constitutional law class. That's clearly not what we have in this case. And as a matter of factual clarification on page two 45 of the record, when the circuit court did discuss with justice shorter, I mean, with prospective juror shorter about returning the next day the prospective juror was actually discharged and said, you don't need to come back. So there was no penalty that was ever assessed on this juror. As to the defendant's statement about whether or not we have plain error. Again, the defendant has the burden under both prongs. One, that the evidence is closely balanced. And two, that if the evidence is not closely balanced, they have to demonstrate some sort of showing of a biased juror. There is no showing a bias in this case. And if there are no further questions, people will be happy to address the first argument. That first argument touches upon whether or not trial counsel was actually ineffective for statements made in opening argument. Right at the outset, trial counsel never promised any specific witness would testify to the facts. Trial counsel statement was, here you go. You will hear testimony about another person who comes over to the car and that he in fact is the one who sells the drugs and the other man leaves. There is no statement as to who was going to testify as to that evidence, but there was testimony to those facts. This court did pick up on the fact that the circuit court was actually willing to give an instruction to the jury about accountability, which necessitated a scintilla of evidence necessary to give that instruction. We have ample evidence through both juror, I mean, officer Davis and officer Jones about this third person. In fact, in cross-examination, counsel was able to elicit testimony from the officer that he believed that this third person was actually involved with defendant. So the officer's testimony was not only was I looking for defendant as he conducted the narcotics sale, but I also thought that this third person was involved. Officer Jones in the undercover car said, I noticed that guy and I was worried he was going to get into the car with us and I needed to be able to radio to my other officers when he was under undercover, that would have blown his cover. The surveillance officer testified. I watched him and the officer clearly testifies. He stopped about 30 feet away and then continued to the vehicle. Now there is no testimony in the car that the off that the third party ever got into the vehicle or touched the vehicle, but this is not just a third party, that party that the police invented. It came out of nowhere. This is somebody who drew the officer's attention based upon what they believed was the relationship between this third party and defendant. Now defense counsel knew that he didn't have a lot going for him. In this case, we have a conviction for delivery of controlled substance, where the defendant is the person who has a conversation with an undercover officer, directs the officer to a house, tells the officer the price of the narcotics goes and obtains the office, their narcotics for the officer, and then spits two items of crack cocaine into the officer's hands. While defense counsel says that evidence isn't overwhelming, semi has said that there has to be clearly competing interest in case we had two plausible theories articulated in semi. We don't have that here. Defense counsel has said, well, there's impeachment. Impeachment alone does not create an equally plausible offense. And while counsel talked about the statements made by defendant and during his allocution defatement statement and allocution, actually it was an admission that he actually did buy the narcotics. That's why defendant was not called is because he thought I was just buying the drugs and I got one for myself as well. That's why the defendant didn't testify and defense counsel knew that. So what was the trial strategy? What was his trial strategy? Didn't have a lot of trials. He didn't have much he could go on. He tried to get the juror to speculate that the third person was involved and said that this was the guy who, who was actually the person involved in the narcotics. That's why he tried to say, why was it your attention drawn to this person? Because defense counsel was able to elicit from all of the officers that they didn't know what happened when defendant left and went into the house where the narcotics were purchased. So he could have very well have been the purchase, the person from whom defendant was purchasing the narcotics. But in this case where you do have the defendant arrested in the vehicle with the officer, after spitting the narcotics out into the officer's hands, there's not really a lot he can do. And it's for that that the people submit that the evidence was properly characterized as overwhelmed. Any questions, justice Harris? No. Oh, thank you. Justice Johnson. No, thank you. Then for all those reasons and those brief, we ask you to affirm the defendant's conviction. Thank you very much. And five minutes to be phones. Thank you, your honors. Very first I will acknowledge that the state is correct about what happened with Cassandra after trial. I misread the record on that point. Again, though we have maintained that that's not essential to our point. The point was that happened after jury selection anyway, but the state is absolutely correct on that point. And in terms of the other arguments, I would say that jurors revealing facts that might give them bias is much different from feeling comfortable saying I have a bias or not. And people, these strain touches upon this, where the very air was, the court had only asked the potential jurors if they had experience with gangs, if anything about gangs would make them unfair. The court said there is a big difference. Someone can have no experience with gangs and be unfair. Someone can, I mean, due to the widespread prejudice of that. So there is a big difference between jurors not lying and admitting that they have certain facts in their existence between feeling comfortable saying whether or not there would be fair. And our next point I would make is that when the court regarding the first argument about ineffective assistance, when the court said it would give an accountability instruction, it actually said you can't present the accountability instruction based on this evidence at trial, because there was no evidence presented. It was only if defense counsel continued with this theory in closing argument that the instruction would be given. And and the fact that counsel's theory was for the jury to kind of surmise about this third person coming to the car. All of that credibility was destroyed when counsel promised the jury would hear evidence of that theory. And that was one of the biggest points in this case, I think is very important because there were flaws. He did not have any drugs on him. He did not have any money and counsel could have certainly made these arguments and said, I want you to believe that it was this third person. Look at these flaws, but he lost any credibility and even being able to do that because of this promise he had made that he never fulfilled. And finally, I would argue that SEBI addresses closely balanced evidence with parties presented on both sides. But the Illinois Supreme Court has made very, very clear. A defendant does not have to testify for evidence to be close. Pietkowski speaks on that issue alone. It says it is not the defendant's burden to testify at trial or present evidence there to create a close case. It's just his burden on appeal to argue the evidence was close here. This is not really a closely balanced evidence argument for argument one. It's whether confidence in the outcome of trial is undermined. And there are so many cases, which we cited in the brief that says confidence in the outcome of a trial will be undermined because breaking a promise to the jury is so damaging because it causes the jury to lose faith in the defendant and defense counsel. And to believe that only the state's version of events is true. So does this court have any other questions? Justices, any questions? No questions. No. Okay. Thank you. Thank you both for your presentations here today. We appreciate it. Job well done. And we will be hearing from us shortly. Thank you very much.